IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| OJORE MULUMBA AJAMU VII, | ) | 8:05CV60 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| DOUGLAS COUNTY CORRECTIONS, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a motion for summary judgment (filing 74), filed by Douglas County Corrections and by Unknown Hubbard, J. Lee, Unknown McPhillips, Unknown Alderich, Unknown Barnes and Unknown Horton, in their official and individual capacities ("Defendants").[1] After careful consideration of the pleadings, affidavits, and briefs, the court concludes that the motion for summary judgment should be granted.[2]

Pursuant to our local rules, Defendants in their brief have set forth statements of material facts with appropriate references to the pleadings and affidavits. *See* NECivR 56.1(a). Because Plaintiff has not controverted these statements,[3] they will

---

[1] As will be discussed later, another defendant, Thomas Gensler, M.D., has not been served with process. Also, Robert Houston was previously dismissed as a defendant, without prejudice, on Plaintiff's own motion. (See filing 35.)

[2] Defendants' subsequently filed motion to compel discovery (filing 79) will be denied without prejudice, as moot.

[3] Plaintiff filed only a limited response to the summary judgment motion (filing 81) that was incorrectly docketed by the clerk of the court as an "objection". The clerk will be directed to designate this filing as a brief. *See* NECivR 7.1(b)(1)(A) ("The party opposing a motion shall not file an . . . "objection," . . . but instead shall file a paginated brief which concisely states the reasons for opposing the motion and cites the authorities relied upon.").

be deemed admitted. *See* NECivR 56.1(b)(1) ("Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.") (emphasis in original).

Plaintiff commenced this action under 42 U.S.C. §1983 on February 9, 2005, alleging that Douglas County Correctional Center (DCCC) officers abused him while he was a pretrial detainee at DCCC. Plaintiff claims that has was assaulted in a "suicide room" on three different occasions. (Filing 1, pgs. 5-6).

Plaintiff specifically claims that correctional officers restrain inmates and assault them because the officers come to work upset. *Id.* at 6. He also states that supervisory personnel allowed the correctional officers to perpetuate these assaults. *Id.* at 5. Plaintiff claims that these assaults are "nonsense", "sickening", and "outrageous." *Id.* at 6. His purported injuries included bumps, scrapes, cuts, and mental trauma. *Id.* at 8.

Plaintiff claims that the actions of Defendants were unconstitutional and violated the Nebraska Jail Standards Act and Federal Jail Standards Guidelines. *Id.* at 7. However, Plaintiff also admits that the restraints were used "because a guard got into an argument w/ me." *Id.* at 6.

On January 5, 2005, Plaintiff started a fight with officers in his cell. (Exhibit 1, at 1-5). Plaintiff "was kicking his door and would not stop." (*Id.* at 1). Plaintiff originally complied with officers' request to sit on his bunk, and they entered Plaintiff's cell to talk with him about not damaging DCCC property. (*Id.*) After a brief conversation about the water supply to the cell, Plaintiff "[j]umped up and began waving his arms and escalated his verbage". (*Id.* at 3.) He "started yelling." (*Id.* at 5.) Then Plaintiff "lunged from his seated position at [Sgt. Aldrich], with one hand reaching" toward the officer. (*Id.* at 2.) "He jumped off his bed and charged Sgt. Aldrich, C/O II Shear, [and] C/O Lynch." (*Id.* at 4.) In response to this threatening

behavior, correctional officers restrained Plaintiff to prevent any further injury to officers, the property, or Plaintiff. (*Id.* at 5.) While in restraints, Plaintiff was examined by medical staff for his safety. (*Id.*) Because of his violent behavior, Plaintiff was placed on lockdown for major misconduct. (*Id.* at 6.)

On January 14, 2005, Plaintiff was on suicide watch, which required him to be checked every fifteen minutes. (Exhibit 2, at 1-2). Contrary to medical staff orders, Plaintiff moved his mattress under his sink and covered himself with his blanket. (*Id.* at 3-7.) Plaintiff was ordered to remove the covers and come out from under the sink. (*Id.*) When Plaintiff refused to obey, officers decided to take the blanket and mattress from Plaintiff to ensure they could properly watch him. (*Id.*) When Plaintiff "became combative," correctional officers placed him in restraints. (*Id.*) Plaintiff was placed on lockdown status for major misconduct. (*Id.* at 8.)

Later that same day, Plaintiff was being transported when he again became combative. (Exhibit 3, at 1-2). He "[b]egan to resist and fight with C/O II Dutcher and [C/O Pierce]." (*Id.* at 2.) To gain compliance and protect himself and the other officer, Officer Dutcher "delivered three straight punches" to Plaintiff and placed him in four-point restraints. (*Id.* at 3.) Plaintiff then directed threats at a correctional officer. (*Id.* at 4.) Plaintiff's restraints were checked by medical personnel. (*Id.* at 6.)

Plaintiff was moved from Room 2 to Room 9, but during the move the Plaintiff spit in officer Dutcher's face. (*Id.* at 8, 10-11.) To gain compliance, officer Dutcher "administered [t]wo strikes to the Plaintiff." (*Id.*) Plaintiff was again placed on lockdown for major misconduct which included "Posing a Serious Threat to the Security of the Facility." (*Id.* at 12.)

On January 27, 2005, Plaintiff was kicking his door violently. (Exhibit 4, at 1-7). He was instructed by multiple correctional officers to stop striking his door. (*Id.*) Plaintiff, however, refused to comply with these directives. (*Id.*) Correctional

officers placed Plaintiff in four point restraints due to his behavior. (*Id.* at 3-4.) DCCC medical staff inspected the restraints to ensure they were appropriately applied. (*Id.* at 6.) Plaintiff was also placed on suicide watch, and was yet again placed on lockdown for many reasons , including "Posing a Serious Threat to the Security of the Facility." (*Id.* at 8-10.) Plaintiff was subsequently disciplined for his thirteenth disruption. (*Id.* at 11.)

Plaintiff initiated three grievance petitions following these events, but only appealed once. (Exhibits 5-8). A grievance dated on February 3, 2005, was disposed of because Plaintiff was restrained "to protect the property of the facility as well as [Plaintiff]." (Exhibit 5). Plaintiff appealed this decision on February 7, 2005, but it was further determined that the restraints were "necessary to ensure officer safety." (Exhibit 6).

Defendants argue as an initial matter that Plaintiff's action is barred by the Prison Litigation Reform Act ("PLRA"), 47 U.S.C. § 1997(e)(a), because he failed to exhaust all of his administrative remedies. In particular, Defendants argue that Plaintiff filed three grievances "involving the same set of facts . .  but only one grievance was appealed pursuant to the established administrative procedure in the *Douglas County Correctional Center Rule and Regulations Handbook* (Exhibit 9)." (Filing 75, at 7.) However, the fact that Plaintiff completed one round of DCCC's grievance procedure is sufficient to satisfy the PLRA's procedural requirement; the fact that Plaintiff filed redundant grievances that were not appealed is immaterial.

Turning next to the merits, Plaintiff's constitutional claim arises under the Fourteenth Amendment's Due Process Clause, but as pretrial detainee he is entitled to the same protection as imprisoned convicts receive under the Eighth Amendment. *See Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir.), *cert. denied*, 128 S.Ct. 201 (2007). The Eighth Amendment protects inmates from unnecessary and wanton infliction of pain by correctional officers. *Johnson v. Hamilton*, 452 F.3d 967, 972

4

(8th Cir. 2006) (citing *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir.2002)). Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously and sadistically to cause harm. *Id.* In deciding whether a particular use of force was reasonable, the Eighth Circuit considers whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries. *Id.* Based on the uncontroverted facts of this case, the court concludes that no reasonable jury could find that Defendants used excessive force to subdue Plaintiff. There is also no evidence to support a finding that Defendants violated any federal or state law in physically restraining Plaintiff. Defendants' motion for summary will be granted, and Plaintiff's action against them will be dismissed with prejudice.[4]

On May 30, 2006, the court granted Plaintiff leave to amend his complaint to add Dr. Thomas Gensler as a party defendant. (Filing 46.) Plaintiff did so by filing a supplemental pleading, alleging that Dr. Gensler was instrumental in placing him in restraints. (Filing 47.) Unfortunately, Plaintiff was not specifically instructed that he was required to obtain service on Dr. Gensler, and the 120-period for obtaining such service, *see* Fed. R. Civ. P. 4(m), has long since expired.

Under Rule 4(m), the court must either notify Plaintiff that it is dismissing the action without prejudice against Dr. Gensler or else order Plaintiff to obtain service upon Dr. Gensler within a specified time. Considering that the court has determined that the use of restraints on him was not unlawful, there would seem to be no point in serving Dr. Gensler and further extending this case, which has been on file for almost three years. Also, leave to amend was granted after Plaintiff filed a motion to

---

[4] The court will withhold entry of judgment pending disposition of the entire action.

5

permit discovery from Dr. Gensler, which does not appear to have taken place. The court therefore notifies Plaintiff that it will dismiss the action against Dr. Gensler without prejudice unless Plaintiff can show cause within 30 days why the action should not be dismissed against Dr. Gensler.

Finally, Plaintiff has filed a document which the clerk of the court has docketed as a motion for miscellaneous relief (filing 83). The court is unable to ascertain what relief, if any, is being requested by Plaintiff.[5] The motion therefore will be denied.

Accordingly,

IT IS ORDERED that:

1. Defendants' motion for summary judgment (filing 74) is granted, and Plaintiff's action is dismissed with prejudice against Douglas County Corrections, Unknown Hubbard, J. Lee, Unknown McPhillips, Unknown Alderich, Unknown Barnes and Unknown Horton, in their official and individual capacities.

2. Defendants' motion to compel (filing 79) is denied without prejudice, as moot.

3. Plaintiff shall show cause on or before January 7, 2008, why this action should not be dismissed without prejudice against Dr. Thomas Gensler. In the absence of such a showing, then, without further notice, this action will be dismissed without prejudice against Dr. Gensler.

---

[5] Plaintiff has even written on the back of the document that he is "not asking for anything here."

4.      The Clerk of court is directed to set a pro se case management deadline using the following text: "January 7, 2008: Plaintiff's show cause deadline."

5.      The Clerk of court is directed to change the description of filing 81 from "Objection to Motion for Summary Judgment" to "Brief in Opposition to Motion for Summary Judgment".

6.      Plaintiff's motion for miscellaneous relief (filing 83) is denied.

7.      The final pretrial conference scheduled for February 29, 2008 (see filing 84), is cancelled.

December 10, 2007              BY THE COURT:

                               s/ *Richard G. Kopf*
                               United States District Judge